REX L. BRAY (#7822)
LAW OFFICE OF REX L. BRAY, P.C.
9557 S. 700 E., Suite 101
Sandy, Utah  84070
Tel: (801) 953-8629
Email: rexbray@hotmail.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| AMBER CHERRINGTON, ANDREW KENTON, YOUNG ONE UNIVERSITY, LLC, AMANDA GRAYCE CROSBY, JENELLE EVANS-EASON, JENNIFER KOCZUR-RICHARDON, FRITZ DREXLER, JOSEPH C. ALAMILLA, PLLC, JOSEPH C. ALAMILLA, and JANE and JOHN DOES 1-20,<br><br>          Plaintiff,<br><br>vs.<br><br>JOHN YATES, TRENA SHARRELL LLOYD, SHARRELL'S WORLD, LLC, WILLIAM M. LLOYD aka PERRY SANDERS, and JANE AND JOHN DOES 1-20,<br><br>          Defendants. | **COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)**<br><br>Case No.:<br><br>Judge: |

COMES NOW Plaintiffs AMBER CHERRINGTON, ANDREW KENTON, YOUNG ONE UNIVERSITY, LLC, AMANDA GRAYCE CROSBY, JENELLE EVANS-EASON, JENNIFER KOCZUR-RICHARDON, FRITZ DREXLER, JOSEPH C. ALAMILLA, PLLC, JOSEPH C. ALAMILLA, and JANE and JOHN DOES 1-20 (collectively referred to as "Plaintiffs"), by and through counsel of record, and hereby files the Complaint as follows:

## PARTIES

1.      Plaintiff Amber Cherrington (hereinafter "Plaintiff Cherrington") is a resident of Salt Lake County, Utah and has been for the ninety days prior to the filing of the Complaint.

2.      Plaintiff Andrew Kenton (hereinafter "Plaintiff Kenton") is a resident of California and has been for the ninety days prior to the filing of the Complaint.

3.      Plaintiff Young One University, LLC (hereinafter "Plaintiff YOU"), is a California limited liability company with its principal place of business in California.

4.      Plaintiff Amanda Grayce Crosby (hereinafter "Plaintiff Crosby") is a resident of Colorado and has been for the ninety days prior to the filing of the Complaint.

5.      Plaintiff Jennifer Koczur-Richardson (hereinafter "Plaintiff Richardson") is a resident of Indiana and has been for the ninety days prior to the filing of the Complaint.

6.      Plaintiff Jenelle Evans-Eason (hereinafter "Plaintiff Eason") is a resident of North Carolina and has been for the ninety days prior to the filing of the Complaint.

7.      Plaintiff Fritz Drexler (hereinafter "Plaintiff Drexler") is a resident of Florida and has been for the ninety days prior to the filing of the Complaint.

8.      Plaintiff Joseph C. Alamilla, PLLC (hereinafter "Plaintiff JCA") is a limited liability company doing business in the state of Utah and its principal place of business is in Salt Lake County, Utah.

9.      Plaintiff Joseph C. Alamilla (hereinafter "Plaintiff Alamilla") is a resident of Salt Lake County, Utah and has been for the ninety days prior to the filing of the Complaint.

10.      Defendant Yates (hereinafter "Defendant Yates") is an individual residing in New York and has been a resident of that state for ninety days prior to the filing of the Complaint.

11.     Defendant Trena Sharrell Lloyd (hereinafter "Defendant Lloyd") is an individual residing in Nevada and has been a resident of that state for ninety days prior to the filing of the Complaint.

12.     Defendant Sharrell's World, LLC (hereinafter "Defendant Sharrell's World"), is believed to be a Nevada limited liability company and its principal place of business in

13.     Defendant William M. Lloyd aka Perry Sanders (hereinafter "Defendant Sanders") is married to Trena Sharrell Lloyd and is an individual residing in Nevada and has been a resident of that state ninety days prior to the filing of the Complaint.

14.     Plaintiffs Jane and John Does 1-20, were referenced or were injured as a result of the Defendants' tortious statements on their YouTube, Instagram, and/or Twitter accounts to an extent that they should be identified and joined in the lawsuit and shall be identified and substituted as soon as they are more appropriately identified.

15.     Defendants Jane and John Does 1-20, reside or conduct business outside of the state of Utah and shall be identified and substituted as soon as they are more appropriately identified as the Defendants may have unknown entities that were a part of the allegations contained herein.

16.     Under Federal Rules of Civil Procedure Rule 23(a)(1) –(4), Plaintiffs are numerous and in different states to the extent that filing individual lawsuits in each of the jurisdictions is not only impracticable, but also for purposes of judicial economy the Plaintiffs have all been injured out of the same episodes, lives, and transmissions and the Defendants are the same in each and every case making the claims and defenses similar to each party and each Defendant.  Finally, the lawsuit may be brought in a federal court in any of the jurisdictions and the Plaintiffs and their counsel will fairly and adequately protect the interests of the class.

17.     Under Federal Rules of Civil Procedure Rule 23(b)(1) the class is appropriate because  prosecuting separate actions by or against individual class members would create a risk of  inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants arising from the set of facts and timeframe as alleged herein; and/or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests as they arise from the same episodes and conduct of the Defendants.

18.     Under Federal Rules of Civil Procedure Rule 23(b)(2) the Plaintiffs are seeking injunctive relief against the Defendants for persistent and dilatory actions and statements made against the Plaintiffs and the Defendants have refused to curtail their activities and statements despite having received a cease-and-desist letter from the Plaintiffs to the extent that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

19.     Under Federal Rules of Civil Procedure Rule 23(b)(3), the Plaintiffs have questions of law and/or fact common to class members that predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy to the number of Plaintiffs as well as similar Defendants and common issues that arose out of the Defendants common persistent and inflammatory conduct.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as the action is between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of

$75,000.00. This Court has supplemental jurisdiction because both the claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the issues be consolidated for a single trial.

21.     Upon information and belief, this Court has personal jurisdiction over Defendant Yates, Defendant Lloyd, Defendant Sharrell's World, Defendant Sanders, and Jane and John Does 1-20 (collectively "Defendants"), based on their continuous and systematic minimum contacts with residents of Utah, through the distribution and targeting of Utah in online content and Defendants have caused injury in this State and district despite notice that they were infringing on Plaintiffs' rights and putting them on notice through a Cease and Desist letter and, therefore, they are present in this judicial district and transact business and solicit business in the State of Utah, within this judicial district, and elsewhere.

22.     Further, upon information and belief, Defendant Yates, Defendant Lloyd, Defendant Sharrell's World, Defendant Sanders, and Jane and John Does 1-20, have committed tortious acts within the State of Utah and/or have committed tortious acts without the State of Utah and engages and/or engaged in other persistent courses of conduct and/or derives substantial revenue from their online live discussions or posting on their sites including, but not limited to, Twitter, YouTube, and/or Instagram, and derive substantial revenue from interstate commerce. In addition, Plaintiffs have been injured in this judicial district.

23.     Thus, this Court has specific personal jurisdiction under Utah's long-arm statute, Utah Code Ann. § 78B-3-205, because (1) Defendants have transacted business within Utah; (2) have contracted to supply services or goods in Utah; (3) have caused injury within Utah through their tortious acts that give rise to this Complaint; and (4) jurisdiction based on Defendants'

contacts with Utah (including, but not limited to, operation of their interactive websites and/or Twitter, Instagram, YouTube) is not inconsistent with the Constitution of the State of Utah or the Constitution of the United States.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

**Plaintiff Richardson Information**

25.     In late January 2020, Plaintiff Richardson and her husband allowed Defendant Yates and his husband to move into their Indiana home with them.

26.     During an encounter with Defendant Yates, he threatened Plaintiff Richardson stating that he would file a false report to Child Protective Services ("CPS") against Plaintiff Richardson and her husband, and he would make a false claim of abuse and neglect against her children, which promptly ended their tenancy.

27.     On or about February 13, 2020, the Ogden Dunes Police Department ("ODPD") appeared at Plaintiff Richardson's house stating they received a child neglect report, and they were there to investigate, and later that afternoon CPS arrived stating they received a report of abuse and neglect.

28.     On or about February 17, 2020, Plaintiff Richardson filed a police report against Defendant Yates and a trespass warning was issued against Defendant Yates.

29.     On or about February 28, 2020, Defendant Yates aired and/or broadcast a livestream, interactive event/program ("went Live" or "Live") on YouTube where Defendant Yates and his audience discussed topics live and he allowed them to make comments while on air that were subsequently recorded and posted on YouTube.

6

30.     On or about February 28, 2020, Defendant John Yates proceeded to release private information against Plaintiff Richardson and discussed not only the allegations he levied against her, but also telling his fans to call CPS and ODPD and report claims against Plaintiff Richardson.

31.     On or about March 8, 2020, Defendant Yates went Live on an online platform and accused Plaintiff Richardson of stealing from him and hiding the stolen items in her drawers, which was untrue.

32.     On March 10, 2020, Defendant Yates released a video on Instagram stating that Plaintiff Richardson was harassing Defendant Yates, and then accused her of neglecting and abusing her child and that she had a drinking and drug problem, which is untrue.

33.     On June 11, 2020, Defendant Yates accused Plaintiff Richardson of attempting to rape his (Defendant Yates') husband, of having an affair with another man, and also publicly disclosed ("doxed") her husband's place of employment and her personal residence to his online viewership.

34.     On or about October 20, 2020, Plaintiff Richardson discovered that Defendant Yates created a blackmail email account to store information about her prior to Defendant Yates' tenancy with her.

35.     On October 21 and October 24, 2020, Defendant Yates went Live on YouTube in another attempt to discredit Plaintiff Richardson and to attack her viewership.

36.     On or about October 26, 2020, Defendant Yates admitted online in a YouTube Live video that was subsequently posted on YouTube as a video that he gave another fan the information to call ODPD and a second user information to call CPS against Plaintiff Richardson.

37.     On October 30, 2020, Defendant Yates appeared at Plaintiff Richardson's

residence, violating the trespass order and recording live video footage.

38.     On November 19, 2020, Defendant Yates discussed filing another false report to the ODPD and to CPS with another guest on his YouTube channel wherein the guest and an online contributor indicated that they will call CPS and report Plaintiff Richardson concerning the false abuse and neglect allegations and Defendant Yates persists in his misinformation campaign against Plaintiff Richardson.

**Plaintiff Drexler's Information**

39.     From October 13, 2020 through November 20, 2020, Defendant Yates doxed Plaintiff Drexler's wife's information showing that she worked at the Mayo Clinic in the hematology and oncology research departments and called Plaintiff Drexler a racist and questioned his wife's political views on white supremacy.

40.     During that same period, Defendant Yates threatened Plaintiff Drexler by stating that he would hate for anything to happen to him or his wife or the companies they managed together.

41.     During that same period, Defendant Yates released Plaintiff Drexler's image on Instagram and released his full name, and a video wherein he claims that Plaintiff Drexler is racist against persons of color.

42.     During that same period, Defendant Yates released Plaintiff Drexler's wife's name and photograph, her work address and location, and asked his followers if they wanted to report her to the Mayo Clinic and asked them to report that her husband (Plaintiff Drexler) was a racist and to describe how that made them feel.

43.     During that same period, Defendant Yates posted photos of Plaintiff Drexler's three

(3) year old child.

**Plaintiff Eason's Information**

44.     On or about March 31, 2021, Defendant Yates posted a YouTube Live video that was subsequently posted on YouTube with Tracey Carnazzo and talked about Plaintiff Eason's dismissal from her new podcast.

45.     Defendant Yates called Deavan Clegg, who said she was at the kickoff event for the Girl S#!t Podcast and Defendant Yates said Plaintiff Eason was let go from the Podcast.

46.     Deavan Clegg told Defendant Yates that she was hired a month ago for the podcast and that she was not aware of Plaintiff Eason's past.

47.     Defendant Yates stated that it was brought up to the management team and that was enough for Plaintiff Eason to be fired, which was untrue and affected Plaintiff Eason and her business opportunities because Defendant Yates made a false statement about Plaintiff's business and prospective business.

48.     Defendant Yates indicated that Plaintiff Eason was let go and was asked not to attend the event due to Defendant Yate's comments on his live broadcast, and he stated that when she showed up to the event, she was denied access to the VIP area and was asked to leave or otherwise excused, which is not true.

49.     On or about April 1, 2021, Defendant Yates went Live on YouTube and subsequently posted a video on YouTube with Defendant Lloyd and Defendant Sharell's World.

50.     Defendant Yates repeated the false statement from the previous night about Plaintiff Eason being let go due to his statements on the podcast and other online celebrities not wanting to work with Plaintiff Eason.

51.     Defendant Yates stated that Plaintiff Eason claimed she was not fired and was a producer, which was true concerning Plaintiff Eason and her role on the Girls S#!t podcast/event.

52.     Defendant Yates stated that Plaintiff Eason handpicked Deavan Clegg to be on the podcast and planned to get her podcast started.

53.     Defendant Yates read a statement posted by Deavan Clegg about not supporting anything related to Plaintiff Eason and her husband David Eason due to their past and she would not work with Plaintiff Eason.

54.     On or about April 1, 2021, Defendant Yates went Live on YouTube and subsequently posted a video on YouTube and said all he could say is that those rumors came out the same time a certain person got fired from a podcast and her name rhymes with Renelle Pevens (Plaintiff Eason), which again was unfounded and false information concerning Plaintiff Eason.

**Plaintiff Kenton's Information**

55.     On or about April 6, 2021, Defendant Yates went on YouTube Live with Defendant Lloyd, Defendant Sharrell's World, and Defendant Sanders and made statements regarding Plaintiff Kenton alleging business fraud when Plaintiff Kenton received a Paycheck Protection Program ("PPP") loan from the U.S. Small Business Administration for his daycare business, Plaintiff YOU.

56.     Defendant Yates told Defendant Lloyd that he went Live on his YouTube Channel and subsequently posted a video on YouTube about Plaintiff Kenton regarding airline tickets he purchased, loans from the government, and Plaintiff Kenton's limited liability companies.

57.     Defendant Lloyd went Live on YouTube discussing Plaintiff Kenton and adding that it was a preview for tomorrow's Live broadcast because it was a big story and that Plaintiff

Kenton had been defrauding the government and how Defendants Yates, Lloyd, and Sanders need to further discuss Plaintiff Kenton's "phony loans."

58.     Defendant Sanders claimed that Plaintiff Kenton and Plaintiff Kenton's mother were contacting smaller blogs to gain attention in an attempt to clean their government fraud; but Defendant Sanders also wanted to remind viewers that what Plaintiff Kenton was doing still amounted to fraud.

59.     Defendant Lloyd and Defendant Sanders' headline for the YouTube episode was "Andrew Kenton's daycare is defrauding the government," and the amount in controversy would be a felony level offense.

60.     During the live stream on April 6, 2021, Defendant Yates, Defendant Lloyd, and Defendant Sanders revealed Plaintiff Kenton's PPP loan documents and his address, and falsely claimed that Plaintiff Kenton created Plaintiff YOU for the purposes of receiving the PPP loan.

61.     Plaintiff Kenton established his daycare, Plaintiff YOU, prior to Covid-19 and the PPP program.

62.     Defendants Yates, Lloyd, and Sanders claimed that Plaintiff Kenton set up the business, Plaintiff YOU, for the sole purpose of receiving the PPP loan, which is not true.

63.     Defendants Yates, Lloyd, and Sanders also alleged that Plaintiff Kenton used the PPP loan to purchase airline tickets for the show '90 Day Fiancé' aired on the TLC network of programs and viewed on cable networks which was false because the PPP loan did not issue until late July 2020, well after the plane tickets had been purchased.

64.     Later that same day, Defendant Yates went onto Defendant Sherrell's World's YouTube channel and titled the piece '90 Day Fiancé Andrew Defrauds the Government for

business loan!', wherein Defendant Yates, Lloyd, and Sanders continued to raise the false allegations against Plaintiff Kenton and Plaintiff YOU.

65.     On or about April 7, 2021, Defendant Lloyd and Defendant Sanders went Live again on Defendant Sherrell's World's YouTube channel and repeated the claims against Plaintiff Kenton and Plaintiff YOU, claiming that Plaintiff Kenton and Plaintiff YOU defrauded the government by making false statements on its PPP loan application, which again is a felony offense falsely claimed against Plaintiff Kenton and his business, Plaintiff YOU.

66.     On the same date, Defendant Lloyd indicated to a third party that she was attacking Plaintiff Kenton and his business, Plaintiff YOU, to curry favor with the network Sharp/TLC in her attempt to secure exclusive interviews with the participants of its show, '90 Day Fiancé.'

**Plaintiff Cherrington's, Plaintiff Alamilla, and Plaintiff Crosby's Information**

67.     On or about April 9, 2021, Defendant Yates streamed Live for twenty-eight (28) minutes on his YouTube channel concerning Plaintiffs Crosby, Cherrington, Alamilla, and JCA; and as of April 25, 2021, this video had received 4,050 views on YouTube after being posted by Defendant Yates.

68.     Defendant Yates stated that he was not planning on doing a Live broadcast, but crazy things were going on concerning information about online celebrity Deavan Clegg ("Deavan") and Jihoon Lee ("Jihoon") and that somebody from team Jihoon reached out to him with information.

69.     Defendant Yates made false statements alleging that Plaintiff Cherrington had Jihoon's Line App login and Instagram login and she was texting online celebrity Deavan posing as online celebrity Jihoon.

70.     Defendant Yates falsely stated that every time money was low Plaintiff Cherrington would threaten Jihoon to go Live on YouTube or Instagram to raise money to defraud the public and Jihoon.

71.     Defendant Yates alleged that Plaintiff Cherrington and Plaintiff Alamilla had formulated this plan prior to the launch of Jihoon's Go Fund Me account and that Defendant Lloyd would provide additional information on the situation.

72.     Defendant Yates further alleged that Plaintiff Cherrington would boast to others that she had been watching Deavan for a long time, claimed that she lived next to her, and she may or may not have been stalking her, which again is a criminal offense in Utah.

73.     Defendant Yates claimed that Jihoon removed the Go Fund Me account because he did not like the threats he was receiving from Plaintiff Cherrington.

74.     Defendant Yates also claimed that more than three (3) people had come forward with evidence that had been submitted to the police.

75.     Defendant Yates asserted that he knew there was a laptop left in Korea and that Deavan had a lot of pictures on the laptop, and he had seen the pictures.

76.     Defendant Yates stated there were directives from certain people within Plaintiff Cherrington's group telling her to spread revenge porn from that laptop, which is a felony allegation against Plaintiff Cherrington.

77.     On April 4, 2021, Defendant Yates went further and criticized Plaintiff Drexler when he went Live on YouTube stating that Plaintiff Drexler "was hideous, that he had glasses, and that he had a dick for a nose."

78.     Defendant Yates stated that Plaintiff Drexler went live with Jihoon and alleged that

13

Plaintiff Cherrington wrote a script for them and scripted out the Live broadcasts of Plaintiff Drexler and Jihoon.

79.    Defendant Yates alleged that Plaintiff Crosby was guilty of fraud for a $16,000.00 Ponzi scheme, which is a felony in the State of Utah.

80.    Defendant Yates also stated that the title of the Go Fund Me account had already been changed three (3) times and that Plaintiff Cherrington, Plaintiff Crosby, Plaintiff Alamilla, and Plaintiff JCA were defrauding people in the amount of $16,000.00, which is a felony offense in the state of Utah and was directed specifically at Plaintiff Alamilla' s professional license and Plaintiff JCA's business and prospective business.

81.    Defendant Yates indicated that the money Plaintiffs Crosby, Cherrington, Alamilla, and JCA made from PayPal, CashApp, and Venmo equaled $16,000.00, but he stated that he estimated it was closer to $20,000.00.

82.    On April 9, 2021, Defendant Yates claimed that Plaintiff Cherrington had naked pictures of Deavan up on her page and referred to Plaintiffs Alamilla and JCA when he stated that "these are low class lawyers."

83.    Defendant Yates further claimed on YouTube Live that Plaintiffs Cherrington, Crosby, and Alamilla were "shady as fu*k."

84.    In the chat comments during Defendant Yates' April 9, 2021, YouTube Live broadcast, someone pointed out that misappropriation of funds will get an attorney disbarred and proceeded to claim that Plaintiff Alamilla would be disbarred, and Defendant Yates stated that as well.

85.    Additional chats in Defendant Yates' April 9, 2021 YouTube Live broadcast

alleged that none of the money had gone towards the custody battle for Jihoon and further claimed that Plaintiff Alamilla, the lawyer for Jihoon, was a criminal.

**Cease and Desist Letters**

86.     On or about April 10, 2021, Defendant Yates, Defendant Lloyd, and Defendant Sanders were sent cease and desist letters (the "Cease-and-Desist Letter") regarding their false and misleading statements and warning that if it continued the Plaintiffs would protect themselves and their reputations to the fullest extent of the law.

87.     On or about April 17, 2021, Defendant Yates went Live on YouTube with online celebrity Elicia Clegg (Elicia) when Defendant Yates streamed for one (1) hour and fifty (50) minutes;  and as of April 26, 2021, Defendant Yates' episode had amassed no less than 4,463 views on YouTube.

88.     While on YouTube Live, Defendant Yates acknowledged to his viewers that he received Plaintiffs' Cease-and-Desist Letter.

89.     In his broadcast, Defendant Yates pointed out to his viewers what he believed to be the funny part about the Cease-and-Desist Letter is that he claimed to have never mentioned Jihoon's Go Fund Me account or the people behind it; although, in the prior episode on his YouTube channel, Defendant Yates spent over half an hour spreading false and defamatory statements about the Plaintiffs.

90.     Defendant Yates claimed that it all came out on or about April 7, 2021, when Jihoon posted that he owed his attorney an additional $11,000.00.

91.     Defendant Yates further claimed on his YouTube Live broadcast that as far as the Cease-and-Desist Letter was concerned, he would not mention certain people's names because of

the Cease-and-Desist Letter, but if he breached it, that Plaintiffs could in fact file a lawsuit against him.

92.     Defendant Yates also stated on his YouTube Live broadcast that he understood how cease- and-desist letters worked, that they are written by a lawyer, and that he worked for attorneys since 2007.

93.     On the same April 17, 2021, episode on his YouTube Live broadcast, Defendant Yates indicated that he wanted Plaintiffs to pursue him, because he understood that a lawyer must write a cease-and-desist letter, then if Defendant Yates broke the cease-and-desist, the people must give the attorney thousands of dollars to come after him in court.

94.     Defendant Yates stated that if the Plaintiffs wanted to come after him in court and file a lawsuit against him, then they could go ahead and do it.  Defendant Yates went on to state that if he were breaking the Cease-and-Desist Letter then Plaintiffs could sue him.

95.     Defendant Yates then claimed that $30,000.00 was raised for a custody case that was never filed, and that the money was misappropriated to Jihoon's slander suit against Devan, which would be a felony in Utah.

96.     Although there was a slander suit filed by Jihoon against Deavan, none of the money raised from the Go Fund Me account was utilized for the slander suit.

97.     Defendant Yates again state that if he broke the Cease-and-Desist Letter tonight that he wanted Plaintiffs to sue him.

98.     A guest named Elicia, on Defendant Yates' YouTube Live broadcast stated that another online personality had a current restraining order against Defendant Yates, which supports the claim that Defendant Yates has a history of salacious, false, and misleading statements against

people and his continued and persisted conduct.

99.     In fact, both the custody and slander matters were filed in the Fourth Judicial District Court, Provo Department, Utah County, State of Utah, as *case no. 204402978, Deavan Clegg v. Jihoon Lee, and case no. 210400201, Jihoon Lee v. Devean Clegg, et al.*, respectively.

**Professional Complaints against Plaintiff Alamilla and Plaintiff Drexler**

100.    On April 17, 2021, Defendant Yates used his YouTube Live broadcast to provoke and encourage his online followers to take action with comments such as "[w]hoever lives in that state, call the bar [on Plaintiff Alamilla]."

101.    On or about April 18 and April 23, 2021, Plaintiff Alamilla and Plaintiff JCA received two (2) negative online reviews by people for whom he did not contract with or for whom he had not represented, and the negative reviews were false.

102.    The reviews appeared after Defendant Yates told his followers to file reviews and complaints to the Utah State Bar, and both were done at his behest to harm Plaintiff Alamilla and Plaintiff JCA by attempting to reduce his revenue and smear his law practice and law license.

103.    On or about April 23, 2021, Plaintiff Alamilla received two (2) bar complaints from persons who were not his clients and who follow Defendant Yates, both of which were against his professional license and against his business, Plaintiff JCA.

104.    On or about April 23, 2021, Plaintiff Drexler received complaints on his professional license at the Florida Department of Agriculture and Consumer Affairs wherein false allegations were made against his professional license and he was later required to attend a hearing to discuss the false reports made against him and his business.

**Plaintiff Alamilla, Plaintiff Cherrington, and Plaintiff Crosby Information**

105.    On or about April 20, 2021, Defendant Yates, Defendant Lloyd, Defendant Sharrell's World, and Defendant Sanders went Live on Sharrell's World YouTube Live for one (1) hour and twenty-five (25) minutes and as of April 25, 2021, the broadcast had amassed no less than 3,652 views on YouTube.

106.    Defendant Lloyd alleged that Plaintiff Cherrington was posting nude photographs of Deavan, stalking Deavan, and running a hate page against Deavan.

107.    On the same date, Defendant Lloyd reported on her YouTube Live that children were being threatened by the Plaintiffs.

108.    Also on the same program broadcast, Defendant Lloyd stated that Plaintiff Crosby and Plaintiff Cherrington forced Jihoon to go along with the lawsuits and threatened him.

109.    Further, during the same online broadcast, Defendant Lloyd claimed that Plaintiff Cherrington, Plaintiff Crosby, and Plaintiff Alamilla were "are all fu*king crooks."

110.    Defendant Lloyd also claimed that she "know[s] how attorney's work … [she] was a paralegal and a court reporter and if my attorney was on the phone with a client for 5 minutes as soon as he hung up he would say bill her for an hour … [a]nyone who works in the legal field knows that's how attorneys work," which is defamatory and an attack on Plaintiff Alamilla's professional law license and against Plaintiff JCA and its law practice.

111.    On the same YouTube Live on April 20, 2021, Defendant Lloyd further alleged that Plaintiff Alamilla's billing is "total disbarment right here," which she directed at Plaintiff Alamilla and his professional law license and against Plaintiff JCA.

112.    Defendant Lloyd further recommended that Jihoon or anyone associated with his

case should file a Bar complaint with the Utah State Bar Association, which subsequently happened on or about April 23, 2021, by persons for whom Plaintiff Alamilla and/or Plaintiff JCA did not perform work and had no contract or obligation to perform any work.

113.    Defendant Lloyd alleged that Jihoon was threatened by Plaintiff Crosby and Plaintiff Cherrington who threatened and harassed Jihoon, which was false and misleading.

114.    Defendant Lloyd further stated that she hoped Plaintiff Alamilla would lose his law license and get disbarred and said that Plaintiff Alamilla's billing was fraudulent, which is a felony offense in the state of Utah.

**Plaintiff Kenton and Plaintiff YOU Additional Information**

115.    On or about April 27, 2021, Defendant Yates again went Live on his YouTube channel and claimed that all the money Plaintiff Kenton and his business, Plaintiff YOU, received was fraudulent and that Plaintiff Kenton was using the money to purchase airline tickets for TLC's cable show '90 Day Fiancé.'

116.    Defendant Yates persisted in his false claims that Plaintiff Kenton was defrauding the government and had submitted false PPP application documents.

117.    On April 30, 2021, Defendant Lloyd, Defendant Sharrell's World, and Defendant Sanders joined an Instagram Live wherein Defendant Yates was similarly participating by phone or Streamyard, an online chatting program whereby Defendant Yates participated in the Instagram Live via Streamyard video.

118.    On this broadcast, Defendants persisted in their claims that Plaintiff Kenton defrauded the government and submitted false application documents, thereby causing harm to Plaintiff Kenton and his business, Plaintiff YOU.

119.    Plaintiff Kenton joined the Instagram Live and asked Defendant Lloyd if she had in fact stated on April 6, 2021, that Plaintiff Kenton defrauded the government and took out an illegal PPP loan, to which Defendant Lloyd responded "[y]es and that is true."

120.    Defendant Lloyd and Defendant Sanders responded to Plaintiff Kenton that "I said what you did was immoral" and she persisted in her statement that Plaintiff Kenton had defrauded the government.

121.    Defendant Lloyd also stated to Plaintiff Kenton that he had an obligation to sue her if what she said was false and invited him to sue her despite having received his Cease-and-Desist Letter.

122.    Defendant Lloyd, Defendant Sanders, and Defendant Yates all acknowledged receipt of the Cease-and-Desist Letter by reading the letter on air and stating that if the Plaintiffs wanted to sue them, they should file the lawsuit.

## FIRST CAUSE OF ACTION
### (Defamation/Defamation Per Se)

123.    Plaintiffs re-alleges and incorporates by reference each and every paragraph above as if fully set forth herein.

124.    Defendants published multiple statements concerning the Plaintiffs that were felony offenses, were false, and were made recklessly.

125.    Defendants issued the statements in multiple broadcasts and the statements are not subject to an identifiable privilege.

126.    Defendants published the statement in reckless disregard of the truth or veracity of the comments and such statements were degrading, damaging, disparaging.

127.    Defendants failed to use reasonable care to determine the truth or falsity of the

20

information they disseminated to their thousands of followers.

128.   Defendants published false statements intentionally, maliciously, and/or with reckless disregard for truth or falsity of the statements made.

129.   Third parties reasonably understood that Defendants' false and/or misleading statements were made about the Plaintiffs because said information included Plaintiffs' names repeatedly and across various media.

130.   Defendants made false and/or misleading statements without authorization and without privilege.

131.   Defendants published false information to cause harm to Plaintiffs and to hamper Plaintiffs' business and economic opportunities.

132.   Defendants published false and/or misleading statements about Plaintiffs intentionally, maliciously, and/or in a grossly negligent manner.

133.   Defendants continue to publish false and/or misleading statements about Plaintiffs intentionally, maliciously, and/or in a grossly negligent manner.

134.   Defendants intend on injuring Plaintiffs' businesses and business reputations.

135.   Defendants' false statements impute and directly assert dishonesty, professional malpractice, and criminal conduct to the Plaintiffs.

136.   Defendants intended to subject Plaintiffs to public ridicule, potential violence, and/or contempt.

137.   Defendants intended to deprive Plaintiffs of the benefit of public confidence.

138.   Defendants intended to injure Plaintiffs' business, profession, and/or trade.

139.   Defendants have failed to delete the defamatory information currently published on

multiple internet platforms.

140.    Defendants continue to make false and misleading statements with the intent of conducting a smear campaign against the Plaintiffs.

141.    Plaintiffs have been harmed and have lost revenue as a result of Defendants' false statements.

142.    Defendants' publications of these false statements constitute defamation per se, and Plaintiffs are therefore presumed to have incurred damages as a result of such publications.

143.    Plaintiffs' businesses and reputations have suffered harm as a result of Defendants' defamatory statements.

144.    Defendants' statements caused harm to Plaintiffs' businesses and reputations.

145.    Plaintiffs suffered identifiable damages as a direct result of the Defendants' defamatory statements in an amount to be proven at trial but in an amount over and above $75,000.00.

146.    Because of Defendants' defamation, Plaintiffs have suffered damages as a result thereof, including special and consequential damages, including, but not limited to attorney fees and costs.

147.    Plaintiffs are entitled to an award of punitive damages against the Defendants in an amount to be proven at trial and pursuant to statute, Utah Code Ann. §78B-8-201(1)(a), due to their persistent, intentional, and malicious actions.

## SECOND CAUSE OF ACTION
### (False Light)

148.    Plaintiffs re-allege and incorporate by reference each and every paragraph above as if fully set forth herein.

22

149.    Defendants have publicly released and published (doxed) the Plaintiffs, their personal information, and their images concerning the Plaintiffs that placed Plaintiffs before the public in a false light and should be subject to liability for invasion of Plaintiffs privacy.

150.    Defendants have made numerous false statements regarding the Plaintiffs.

151.    Defendants' statements depict Plaintiffs in a false light in the public eye.

152.    Defendants' false statements depict Plaintiffs as dishonest, liars, racists, rapists, unprofessional, crooks, and/or unethical.

153.    Defendants' statements are highly offensive and objectionable to the Plaintiffs and to a reasonable person, and such statements attribute to Plaintiffs' characteristics, conduct, or beliefs that are false, thereby placing Plaintiffs in a false light/position before the public.

154.    Plaintiffs suffered identifiable damages as a direct result of the Defendants' defamatory statements in an amount to be proven at trial but in an amount over and above $75,000.00.

155.    Plaintiffs have suffered damages as a result thereof, including special and consequential damages, including, but not limited to attorney fees and costs.

156.    Plaintiffs are entitled to an award of punitive damages against the Defendants in an amount to be proven at trial and pursuant to statute, Utah Code Ann. §78B-8-201(1)(a), due to their persistent, intentional, and malicious actions.

### THIRD CAUSE OF ACTION
### (Invasion of Privacy/Intrusion Upon Seclusion)

157.    Plaintiffs adopt and incorporate by reference the paragraphs above as if fully set forth herein.

158.    One who intentionally intrudes, physically or otherwise, upon the solitude or

seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

159.    Plaintiffs were not involved with the conduct alleged by the Defendants depicting Plaintiffs as dishonest, liars, racists, rapists, unprofessional, crooks, and/or unethical and Plaintiffs were forced into the public light by inaccurate reporting by the Defendants.

160.    A claim that someone is dishonest, liars, racists, rapists, unprofessional, a crook, and/or unethical is considered to be highly offensive to a reasonable person.

161.    As a result of the injuries above described, Plaintiffs incurred special damages, punitive damages, consequential damages, and general damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Punitive Damages)

162.    Plaintiffs adopt and incorporate by reference the paragraphs above as if fully set forth herein.

163.    Defendants' actions were the result of willful and malicious or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of the Plaintiffs.

164.    Plaintiffs are entitled to an award of punitive damages against the Defendants in an amount to be proven at trial and pursuant to statute, Utah Code Ann. §78B-8-201(1)(a).

## FIFTH CAUSE OF ACTION
### (Slander/Libel and Slander/Libel *Per Se*)

165.    Plaintiffs adopt and incorporate by reference the paragraphs above as if fully set forth herein.

166.    Defendants implicated Plaintiffs in different and multiple felony crimes under Utah

Code Annotated, which makes it a felony for a person and/or entity to be involved in rape, racism, embezzlement, financial fraud, and/or hate speech to the degree and extent alleged by the Defendants.

167. By implicating Plaintiffs in a serious crime, Plaintiffs allege that Defendants' conduct falls into the category of slander *per se* and that Defendant should be liable to Plaintiffs for damages in an amount to be proven at trial.

168. Defendants spoke and/or transmitted the information to the public, but also published it on their YouTube, Instagram and Twitter accounts for the public to view.

169. Based upon Defendants' reckless disregard for Plaintiffs' rights and willful and intentional conduct, Plaintiffs are requesting punitive damages pursuant to Utah Code Ann. § 78B-8-201(1)(a). Plaintiffs are also allowed to recover damages for general damages as well as consequential damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Conversion/Misappropriation of Likeness/Right to Publicity)

170. Plaintiffs adopt and incorporate by reference the paragraphs above as if fully set forth herein.

171. Conversion is an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession.

172. Plaintiff has been deprived of the use and possession of their intellectual and online property (image and likeness) as a result of Defendants' willful conduct.

173. Defendants have continued to profit from Plaintiffs' image and likeness to obtain monies from online sources and from possible television shows and/or cable series and shows.

174. Defendants have profited from Plaintiffs and have failed to otherwise account to

Plaintiffs for the amounts earned from their images and likeness and without Plaintiffs' permission.

175.    When a person uses the image or likeness of an individual without his or her consent or permission, they have committed misappropriation of likeness.

176.    At common law, the use of another person's image to promote or publicize products or services without their direct consent may constitute grounds for such a cause of action because the law recognizes a person's right to be free from exploitation in this manner.

177.    Based upon Defendants' reckless disregard for Plaintiffs' rights and willful and intentional conduct, Plaintiff is requesting punitive damages pursuant to Utah Code Ann. § 78B-8-201(1)(a).   Plaintiff is also allowed to recover damages for general damages as well as consequential damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (Intentional/Tortious Interference with Prospective Economic Relations)

178.    Plaintiffs adopt and incorporate by reference the paragraphs above as if fully set forth herein.

179.    Defendants intentionally interfered with the Plaintiffs' existing or potential economic relations for an improper purpose or by improper means including, but not limited to, posting false and misleading statements and/or causing others to post false and misleading comments about the Plaintiffs and their businesses, and the interference caused injury to the Plaintiffs in an amount to be proven at trial.

180.    Plaintiffs believe that Defendants bear Plaintiff ill will and have gone out of their way to injure Plaintiffs economic and business relations.

181.    Defendants continue to injure Plaintiffs and their economic relations by disseminating false information about Plaintiffs with the intent to harm Plaintiff.

182.   Defendants know Plaintiffs' include professionals and other YouTube personalities and encouraged false reporting of the Plaintiffs both to YouTube and to the Plaintiffs' respective professional licensing agencies.

183.   Defendants convinced viewers to make false reports against the Plaintiffs both online, to police agencies, to their professional agencies, and to otherwise harass and post false information about the Plaintiffs.

184.   There is no privilege or justification for Defendants' conduct.

185.   Plaintiffs have suffered damages including, but not limited to, consequential, special, and general damages, but also request punitive damages under Utah Code Ann. §78B-8-201(1)(a) as Defendants' actions were intentional, willful, malicious, and/or reckless.

### EIGHTH CAUSE OF ACTION
**(Civil Conspiracy)**

186.   Plaintiffs re-allege and incorporate by reference each and every paragraph above as if fully set forth herein.

187.   All the Defendants worked together in combination for the object purpose of injuring and harming the Plaintiffs, their reputations, their businesses, and/or their professions.

188.   The Defendants' conduct has exhibited a meeting of the minds to accomplish this purpose as Defendants have appeared together on numerous shows to injure and persistently harass the Plaintiffs.

189.   These actions and conduct by the Defendants were unlawful and/or overt.

190.   As a direct and proximate result Plaintiffs have been damaged in an amount to be proven at trial

191.     As a direct and proximate result Plaintiffs have been damaged in an amount of no less than $75,000.00 plus additional damages, interest, costs and attorney fees.

192.     As a result, under Utah Code Ann. § 78B-8-201(1)(a), Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
**(Civil Harassment)**

193.     Plaintiffs re-allege and incorporate by reference each and every paragraph above as if fully set forth herein.

194.     Defendants intended to portray the Plaintiffs negatively and falsely.

195.     Defendants' course of conduct is a patterned series of actions intended to portray Plaintiffs negatively and falsely.

196.     Defendants intend to intimidate Plaintiffs.

197.     Since January 2020, Defendants have knowingly and willfully engaged in a course of conduct directed at the Plaintiffs, including publishing defamatory statements about Plaintiffs, to their distress.

198.     Defendants' knowing and willful course of conduct directed at Plaintiff is such conduct that would cause a reasonable person to suffer emotional distress.

199.     In fact, Defendants' conduct did cause Plaintiffs substantial emotional distress, including, but limited to, loss of sleep and anxiety.

200.     As a direct and proximate result Plaintiffs have been damaged in an amount to be proven at trial

201.     As a direct and proximate result Plaintiffs have been damaged in an amount of no less than $75,000.00 plus additional damages, interest, costs and attorney fees.

202.    As a result, under Utah Code Ann. § 78B-8-201(1)(a), Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Preliminary and Permanent Injunction)

203.    Plaintiffs re-allege and incorporate by reference each and every paragraph above as if fully set forth herein.

204.    Due to the Defendants' persistent bad actions, without injunctive relief Plaintiffs will suffer irreparable harm to the value of their businesses, reputations, and good will for which compensatory damages alone are inadequate.

205.    The purpose of this injunction is to allow Plaintiffs to conduct their businesses, professions, and/or trades without undue influence from the Defendants.

206.    Plaintiffs pray this Court issue injunctive orders and declaratory relief directing Defendants to minimize the harm to Plaintiffs and their businesses, professions, and/or trades without undue influence from the Defendants.

207.    Plaintiffs are entitled to entry of a preliminary and, at the conclusion of these proceedings, a permanent injunction against Defendants and anyone acting in concert with Defendants or at their direction, prohibiting Defendants from making/publishing, whether indirectly or directly, statements about Plaintiffs that the Court determines are false, inflammatory, and/or injurious concerning the Plaintiffs.

208.    Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action and Plaintiffs are entitled to reasonable attorney fees and costs.

209.    As a result, under Utah Code Ann. § 78B-8-201(1)(a), Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request judgment against the Defendants as follows:

A.     That a monetary judgment be entered in favor of Plaintiffs and against Defendants in an amount to be proven at trial, together with consequential damages, general damages, special damages, court interest, punitive damages, court costs, and/or attorney fees all from the applicable dates until paid in full;

B.     For interest from the date of filing to when the judgment amount is paid in full;

C.     For punitive damages under Utah Code Ann. § 78B-8-201(1)(a);

D.     For costs of the suit herein;

E.     For attorney fees;

F.     For a Jury Trial;

G.     Should a deficiency result, then a personal money judgment should be entered in favor of Plaintiffs and against Defendants in the amount of such deficiency; and

H.     For such other relief as the Court deems just and equitable in the premises.

DATED this __17th__ day of May, 2021.

> _/s/ Rex L. Bray    /_
> Rex L. Bray, Esq.
> Utah Bar No. 7822
> 9557 South 700 East, Suite 101
> Sandy, Utah 84070
> _Attorney for Plaintiffs_